**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Darren Williams, individually and on behalf of all others similarly situated, | 3:21-cv-50207 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Molson Coors Beverage Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Molson Coors Beverage Company ("defendant") manufactures, labels and sells "hard seltzer" "With Vitamin C" under the Vizzy brand ("Product").

2.     The Pineapple Mango version states, "Vizzy Hard Seltzer," "Hint of Pineapple Mango," and "With Antioxidant Vitamin C From Acerola Superfruit."



3.     The front panel of a twelve-pack states, "VIZZY HARD SELTZER WITH ANTIOXIDANT VITAMIN C FROM ACEROLA SUPERFRUIT."



4.     One ad states, "ANOTHER HARD SELTZER? YEAH, BUT WE'VE GOT ANTIOXIDANT VITAMIN C."



5.    Another ad highlights that the Product is the "FIRST HARD SELTZER MADE WITH ANTIOXIDANT VITAMIN C FROM ACEROLA SUPERFRUIT."



6.    In one ad, the Product is described as "THE ONLY HARD SELTZER WITH ANTIOXIDANT VITAMIN C."



7.    In encouraging consumers to purchase Vizzy over its competitors, the advertisements state, "WHEN IN DOUBT, ALWAYS CHOOSE C. VIZZY HARD SELTZER WITH ANTIOXIDANT VITAMIN C FROM ACEROLA SUPERFRUIT."



8.     The Product's Vitamin C content is promoted alongside pictures of fresh fruit, which give consumers the impression the Product is a nutritionally-equivalent source of the nutrients found in these fruits.



9. The Product's Nutrition Facts confirm it contains Vitamin C, at 18 mg or twenty percent of the recommended daily value ("RDV").



10. The ingredient list confirms that the dried acerola juice is used as the source of the Product's vitamin C.



**INGREDIENTS:** SPARKLING WATER, CANE SUGAR, NATURAL FLAVOR, PINEAPPLE JUICE CONCENTRATE, CITRIC ACID, SODIUM CITRATE AND DRIED ACEROLA CHERRY JUICE

I.  "With Vitamin C" is a Prohibited and Misleading Nutrient Content Claim because "With" is a Prohibited Synonym

11. Congress required that the FDA develop and implement nutrient content claims to

prevent consumers from being misled by the endless terms and descriptors appearing on foods.[1]

12.     The words used in connection with a nutrient tell consumers how much of that nutrient the food or beverage will have.

13.     To say that a food or beverage is a "good source" of a nutrient means it has between ten and nineteen percent of the Recommended Daily Intake ("RDI") or Daily Reference Value ("DRV"). 21 C.F.R. § 101.54(c)(1).

14.     The terms permitted to tell consumers this are limited to "good source," and its authorized synonyms, "contains," and "provides." 21 C.F.R. § 101.54(c)(1).

15.     Synonyms which are not authorized are prohibited from being used in a nutrient content claim.

16.     The reason is to prevent nutrient content claims which are or can be misleading.

17.     If a company could escape the reach of the regulations by use of a thesaurus, consumers would be misled.

18.     The Product's statement, "With Vitamin C," is similar to a "good source" claim, because "with" has a similar definition to "contains."

19.     However, "with" is not an authorized synonym for "contains," which means its use is prohibited.

II.    "With Vitamin C" is Misleading because it Implies Alcohol Consumption is a Valid Way to Obtain Nutrients

20.     The terms "antioxidant [Vitamin C]" and "superfruit [Acerola]" give the impression the Product is a healthful and nutritious source of vitamin C.

---

[1] Illinois incorporates the federal food labeling regulations in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations.  See  410 ILCS 620/1, *et seq.*

21.    Even though the Product contains twenty percent of the RDI of vitamin C per serving, it is necessary to consume an alcoholic beverage to get this amount of vitamin C.

22.    The emphasis on vitamin C and "superfruit" acerola suggest the Product is "a healthful source of nutrients, obscuring the fact that alcoholic beverages provide empty calories, are associated with serious health conditions, and can impair the body's metabolism of nutrients."[2]

23.    The Product's nutrient content claim is contrary to the FDA's fortification policy, which prohibits addition of nutrients to foods such as carbonated and alcoholic beverages.

24.    The Product's nutrient content claim is contrary to the 2020-2025 Dietary Guidelines for Americans ("DGA"), which encourages limitation of alcoholic beverages for reasons including limitation of calorie intake.

25.    The DGA also state that "alcoholic beverages are 'not a component of the USDA Dietary Patterns.'"[3]

26.    By promoting the Product as containing a significant amount of vitamin C, consumers are misled about the nutritional properties of alcoholic beverages.

27.    The DGA encourage consumers to select "healthful sources of nutrients as part of a well-rounded diet" instead of meeting vitamin-intake guidelines through consumption of otherwise nutritionally-harmful foods and beverages.

28.    Evidence suggests that even drinking *within* recommended limits may increase the overall risk of death from various causes, such as from several types of cancer and some forms of cardiovascular disease.

29.    Over many years, consumption of excess alcohol can impair the body's ability to digest and utilize nutrients.

---

[2] CSPI, Vizzy Enforcement Letter, Mar. 15, 2021.
[3] *Id.* at 3.

30.    Beyond excess calories, alcohol consumption is associated with a range of negative health outcomes.

31.    Above average alcohol consumption is associated with an increased risk of death from all causes compared with lower average alcohol consumption.

32.    Misuse of alcohol or consumption in amounts greater than recommendations increases risk of conditions such as liver disease, cardiovascular disease, injuries, and alcohol addiction and dependency.

33.    Claims on alcoholic beverages based on added nutrients misleadingly obscure alcohol's harmful effects on health.

34.    Excess alcohol consumption, over the long-term, impairs the body's ability to digest and utilize nutrients.

35.    Ethyl alcohol [or ethanol], the base alcohol in alcoholic drinks, contains seven calories per gram.

36.    In 2004, the National Institute on Alcohol Abuse and Alcoholism (NIAAA) wrote:

Alcoholic beverages primarily consist of water, pure alcohol (chemically known as ethanol), and variable amounts of sugars (i.e., carbohydrates); their content of other nutrients (e.g., protein, vitamins, or minerals) is usually negligible. (Because they provide almost no nutrients, alcoholic beverages are considered "empty calories").

37.    Since alcoholic beverages "supply calories but few nutrients," the 2020-2025 Dietary Guidelines for Americans (DGA) encourages "[a]dults who choose to drink . . . to limit daily intakes . . . so as not to exceed daily calorie limits," and cautions that, in general, "drinking less is better for health than drinking more."[4]

38.    However, alcoholic beverages account for the additional calories consumed *after* "meeting food group recommendations in nutrient-dense forms."

---

[4] CSPI, Letter to FDA re: Enforcement Action on Vizzy Hard Seltzer, Mar. 15, 2021.

39.     According to CSPI, "claims such as 'made with antioxidant vitamin C' convey healthfulness and are misleading on alcoholic beverages given their empty calories, association with serious health conditions, and anti-nutrient properties."

40.     The addition of nutrients to foods ("fortification") is limited to instances where a balanced diet may not provide the necessary amount of specific nutrients.

41.     Fortification of foods is not intended as a replacement for consumption of a balanced and healthy diet.

42.     Fortification of foods can create a false impression that particular foods are a nutritionally superior choice, which can cause a dietary imbalance and mislead consumers.

43.     Fortification of foods without any rationale can mislead consumers to (1) believing such fortification is necessary, (2) consume more of the fortified foods, and (3) consume less non-fortified foods, which are likely more nutritionally appropriate.

44.     Fortification of snack foods and carbonated beverages is prohibited because these categories are (1) often high in sugar and empty calories, (2) not nutrient-dense, and (3) not intended to be significant parts of balanced diets.

45.     Alcoholic beverages, like Vizzy Hard Seltzer, are carbonated beverages, are not nutrient dense and it is harmful to promote consumption of products with these qualities.

III. Conclusion

46.     The Product contains other representations which are false, deceptive and misleading, including that it has a "hint" of real mango.

47.     While pineapple juice is listed on the ingredient list, mango is not.

48.     This means that any mango is part of the added flavoring and is not present beyond a negligible amount.

9

49.    Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

50.    Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

51.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

52.    Plaintiff paid more for the Product based on the representations than he would have otherwise paid.

53.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $15.99 for a pack of twelve 12 OZ cans, excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

54.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

55.    Plaintiff Darren Williams is a citizen of Illinois.

56.    Defendant Molson Coors Beverage Company is a Delaware corporation with a principal place of business in Golden, Jefferson County, Colorado.

57.    Diversity exists because plaintiff Darren Williams seeks to represent a class of persons who include citizens of different states from defendant.

58.    Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive

of interest and costs.

59.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and his experiences identified here.

<u>Parties</u>

60.    Plaintiff Darren Williams is a citizen of Rockford, Winnebago County, Illinois.

61.    Defendant Molson Coors Beverage Company is a Delaware corporation with a principal place of business in Golden, Colorado, Jefferson County

62.    Defendant is one of the largest producers of alcoholic beverages in the world.

63.    Defendant is the custodian of several of the most respected brands in this field, including Coors and Molson.

64.    Defendant's Vizzy Hard Seltzer was introduced to capitalize on growing consumer demand for "hard seltzer," which are increasingly formulated and marketed to appear as healthy "fruit" beverages, like juice or a low-calorie seltzer.

65.    Defendant's vast marketing abilities realized that to drive sales, it could further bring consumers to consume hard seltzer by the addition of "healthful" qualities, such as the addition of vitamins and nutrients.

66.    Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, including between April and May 2021, at locations including Target, 6560 East State Street Rockford IL 61108.

67.    Plaintiff bought and consumed the Product knowing the negative effects of alcoholic beverages but believed the addition of nutrients – vitamin C – made up for any downside.

68.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

11

69.   Plaintiff paid more for the Product than she would have paid otherwise.

70.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations about its components, ingredients and qualities are consistent with its representations, i.e., the Product no longer misleadingly touts its health benefits, such that a false impression is created.

<u>Class Allegations</u>

71.   The class will consist of all purchasers of the Product who reside in Illinois during the applicable statutes of limitations.

72.   Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

73.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

74.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75.   Plaintiff is an adequate representative because his interests do not conflict with other members.

76.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

77.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79.   Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

80.     Plaintiff incorporates by reference all preceding paragraphs.

81.     Plaintiff and class members bought the Product because they believed, based on the representations, that alcoholic beverages could be healthful sources of nutrients.

82.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

83.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

84.     Plaintiff relied on the representations.

85.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

86.     The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that the nutrients it contained outweighed the negative aspects of alcoholic beverages, such as excess calories and increased risk of ailments.

87.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

88.     This duty is based on Defendant's outsized role in the market for this type of Product.

89.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

90.     Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

91.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

92.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

93.    Defendant had a duty to truthfully represent the Product, which it breached.

94.    This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a trusted brewer of alcoholic beverages.

95.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

96.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

97.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

98.    Defendant misrepresented and/or omitted the attributes and qualities of the Product.

99.    Defendant's fraudulent intent is evinced by its knowledge that alcoholic beverage cannot and should not serve as healthful sources of nutrients, and their consumption should be limited, not encouraged.

<u>Unjust Enrichment</u>

100.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 22, 2021

                                     Respectfully submitted,

                                     Sheehan & Associates, P.C.
                                     /s/Spencer Sheehan
                                     60 Cuttermill Rd Ste 409
                                     Great Neck NY 11021-3104
                                     Tel: (516) 268-7080
                                     Fax: (516) 234-7800
                                     spencer@spencersheehan.com